## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| Matthew Seebachan and | § | |
| Marcia Seebachan, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Civil Action No. 4:17-cv-537 |
| | § | |
| State Farm Mutual Automobile | § | |
| Insurance Company d/b/a State Farm, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFFS' COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Matthew Seebachan and Marcia Seebachan (hereinafter referred to as "Plaintiffs"), and respectfully file this Complaint against State Farm Mutual Automobile Insurance Company d/b/a State Farm (hereinafter referred to as "Defendant" or "State Farm").

In support hereof, Plaintiffs would state and show unto this Honorable Court the following:

### I. Parties

1.    Plaintiffs Matthew Seebachan and Marcia Seebachan are husband and wife. Plaintiffs reside in and are citizens of Murphy, Collin County, Texas.

2.    Defendant, State Farm Mutual Automobile Insurance Company d/b/a State Farm, is an out-of-state insurance company with its primary place of business in Illinois. Service of process upon this Defendant may be had by serving its registered agent for service, Corporation Service Company, at 221 E. 7th Street, Austin, Texas 78701-3218.

## II. Jurisdiction

3.    This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

4.    The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

5.    On or about December 21, 2013, Matthew Seebachan was driving a 2010 Honda Fit (VIN#JHMGE8H43AC006993). Marcia Seebachan was the right-front passenger in the vehicle. Both Matthew and Marcia Seebachan were properly wearing their seat belts.

6.    The Seebachans purchased the 2010 Honda Fit used in August of 2013, and had only had it for approximately 4 months before the accident.

7.    When the Seebachans purchased the 2010 Honda Fit, it was important to them to purchase a vehicle which had no prior collisions, damage, or significant repair work.

8.    At the time the vehicle was purchased, it was not disclosed to Plaintiffs that the Honda Fit had had previous repairs and body work (particularly a new roof)

which had been performed by John Eagle Collision Center in Dallas. The CarFax report which was provided to them did not contain any repair work or other damage on it.

9.   While driving, the Seebachan vehicle was struck by another vehicle being driven by Jack Jordan.

10.   During the accident, both Matthew and Marcia Seebachan sustained serious injuries when their safety cage collapsed because their roof literally separated where it had been glued with 3M 8115 adhesive rather than being welded.

11.   After the accident, the vehicle caught on fire, and Matthew Seebachan sustained serious burn injuries. He was trapped in the burning vehicle, and was conscious while his body burned.

12.   Again, as noted earlier, prior to the subject accident, John Eagle Collision Center had performed certain repairs and/or maintenance to the subject vehicle including removing, replacing a new roof, and using adhesive rather than welds to secure the roof to the safety cage.

13.   It was only after the accident had occurred that it was discovered that the vehicle had had previous repair work. Moreover, there was no way for Plaintiffs to have known because of the way the roof work was covered up by John Eagle.

14.   The 2010 Honda Fit was originally developed, designed, manufactured, and tested by Honda to provide structural and fuel system crashworthiness protection which would prevent serious injuries to occupants in foreseeable accidents including accidents like the Seebachens experienced.

15.   However, the repairs performed by John Eagle Collision Center were defective/deficient. John Eagle Collision Center is a "certified" Honda body shop. However, John Eagle did not follow the 2009-2013 Honda Fit Body Repair Manual, which called for the steel roof to be welded onto the Honda Fit's steel safety cage with 104 spot welds. Below are sections of  the 2009-2013 Honda Fit Body Repair Manual:

# 2009-2013 Honda Fit Body Repair Manual
## INTRODUCTION

**How to Use This Manual**

This manual covers the repairs of a 2009-2013 model series Fit that have been involved in an collision, and it describes the work related to the replacement of damaged body parts.

Please read through these instructions and familiarize yourself with them before actually using this manual.

NOTE: Refer to the appropriate Fit Service Manual, for specifications, wire harness locations, safety stand support points, etc.

**Special Information**

**⚠ WARNING**

You CAN be KILLED or SERIOUSLY HURT if you don't follow instructions.

**⚠ CAUTION**

You CAN be HURT if you don't follow instructions.

NOTE: Gives helpful information.

**⚠ CAUTION**

Detailed descriptions of standard workshop procedures, safety principles and service operations are not included. Please note that this manual does contain warnings and cautions against some specific service methods which could cause PERSONAL INJURY, damage a vehicle, or make it unsafe. Please understand that these warnings cannot cover all conceivable ways in which service, whether or not recommended by Honda, might be done or of the possible hazardous consequences of each conceivable way, nor could Honda investigate all such ways. Anyone using service procedures or tools, whether or not recommended by Honda, must satisfy himself thoroughly that neither personal safety or vehicle safety will be jeopardized.

All information contained in this manual is based on the latest product information available at the time of printing. We reserve the right to make changes at any time without notice. No part of this publication may be reproduced, stored in retrieval system, or transmitted, in any form by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher. This includes text, figures and tables.

**HONDA MOTOR CO., LTD.**
**Service Publication Office**

1 **General Information**

2 **Paint Information**

3 **\*Replacement**

4 **Body Dimensional Drawings**

5 **Rust Prevention**

**General Safety Precautions**

**Reference**

Main Menu

# A Few Words About Safety

## Service Information

The repair information contained in this manual is intended for use by qualified, professional technicians. Attempting repairs without the proper training, tools, and equipment could cause injury to you or others. It could also damage the vehicle or create an unsafe condition.

This manual describes the proper methods and procedures for doing repairs. Some procedures require the use of specially designed tools and dedicated equipment. Any person who intends to use a replacement part, a repair procedure, or a tool that is not recommended by Honda, must determine the risks to their personal safety and the safe operation of the vehicle.

If you need to replace a part, use Honda parts with the correct part number, or an equivalent part. We strongly recommend that you do not use replacement parts of inferior quality.

## FOR YOUR CUSTOMER'S SAFETY

Proper repair is essential to the customer's safety and the reliability of the vehicle. Any error or oversight while repairing a vehicle can result in faulty operation, damage to the vehicle, or injury to others.

> **⚠ WARNING**
>
> Improper repairs can create an unsafe condition that can cause your customer or others to be seriously hurt or killed.
> Follow the procedures and precautions in this manual and other service materials carefully.

## FOR YOUR SAFETY

Because this manual is intended for the professional service technician, we do not provide warnings about many basic shop safety practices (for example, hot part - wear gloves). If you have not received shop safety training or do not feel confident about your knowledge of safe repairing practices, we recommend that you do not attempt the procedures described in this manual.

> **⚠ WARNING**
>
> Failure to properly follow instructions and precautions can cause you to be seriously hurt or killed.
> Follow the procedures and precautions in this manual carefully.

Some of the most important general service safety precautions are given below. However, we cannot warn you of every conceivable hazard that can arise in doing repair procedures. Only you can decide whether or not you should do a given task.

## IMPORTANT SAFETY PRECAUTIONS

- Make sure you have a clear understanding of all basic shop safety practices and that you are wearing appropriate clothing and using safety equipment. When doing any repair task, follow these precautions:
  - Read all of the instructions before you begin, and make sure you have the tools, the replacement or repair parts, and the skills required to do the tasks safely and completely.
  - Protect your eyes by using proper safety glasses, goggles, or face shields any time you hammer, drill, grind, or work around pressurized air or liquids and springs or other stored-energy components. If there is any doubt, put on eye protection.
  - Use other protective wear when necessary, for example, gloves or safety shoes. Handling hot or sharp parts can cause severe burns or cuts. Before you grab something that looks like it can hurt you, stop and put on gloves.
  - Protect yourself and others whenever you have the vehicle up in the air. Any time you raise the vehicle, either with a lift or a jack, make sure that it is always securely supported. Use jack stands.
  - Protect yourself by wearing an approved welding helmet, gloves, and safety shoes any time you are welding. Protect yourself from burns from hot parts; allow the parts to cool before working in that area.
  - Protect yourself from paints and harmful chemicals by wearing an approved respirator, eye protection, and gloves whenever you are painting. Spray paint only in an approved paint booth that is well ventilated.

Main Menu          Table of Contents

## Installation

NOTE:
- Welding symbols
  ╳: 2-Plate spot welding
  ⊗: 3-Plate spot welding
  ⊠: 4-Plate spot welding
  ●: MIG plug welding
  ▬: MIG welding
  L= Welding length Unit: mm (in.)
- ( ): The number of welds

1. Clamp the new roof panel and install the roof arch gusset.

2. Check the body dimensions.

   - Windshield and door opening (see page 4-10)
   - Tailgate opening (see page 4-11)
   - Rear pillar gutter position (see page 4-9)
   - Passenger's compartment (see page 4-7)
   - Door hinge position (see page 4-6)

3. Tack weld the front and rear corner edges of the roof panel.

4. Temporarily install the roof molding, the windshield, the tailgate and the door, then check for differences in level and clearance.
   Check the external parts fitting position (see page 4-12). Make sure the body lines flow smoothly.

5. Do the main welding.

   - From inside the vehicle, weld the front roof rail (A) and the inner upper extension (B).
   - Fix the rear roof rail (C) with the mounting bolts (D).
   - Weld the front, rear, and side flange of the roof panel (E).
   - The roof area must be free of burrs and/or sharp edges to prevent damage to the side curtain airbag during deployment.



[VIEW: Z]





**3-33**

16.   In order to have a better understanding, below are pictures of the driver's and passenger's sides of the subject vehicle as well as an exemplar vehicle:





17.   John Eagle Collision Center admitted, under oath, on July 7, 2017, that John Eagle violated Honda's 2009-2013 Honda Fit Body Repair Manual when it glued the new roof to the 2010 Honda Fit with 3M 8115 adhesive. Again, as shown above, Honda's official repair manual for dealers specifies that a new roof must be welded onto a 2009-2013 Honda Fit when the roof is replaced. John Eagle's corporate representative further testified on July 7, 2017, that the 3M 8115 adhesive used to glue the new roof on was used despite the fact that 3M has specifically stated that Honda does not permit the use of adhesives. Below is 3M's language:



Thursday, December 22, 2011

Regarding Roof Skin Bonding

The use of adhesives in attaching non-structural exterior panels in a repair setting has been well established and accepted as industry practice for over ten years in the United States.  In addition to the standard/obvious panel bonding benefits (ease of use, equipment access, corrosion protection, seam sealing, stress distribution, etc.), the fact that dropping the headliner and extreme measures for protecting interior components from weld sparks are not needed, makes bonding procedures for roof skins preferred over weld-only procedures in many shops.

Additional support for Roof Skin Bonding is demonstrated by I-CAR, not only in the Top 10 Technical Inquiries section of the I-CAR website:

> I-CAR recommends following the vehicle maker's recommendations regarding the use of adhesives for panel installation. Using adhesives without the vehicle maker's recommendation is a business decision.

> With that being said, there has been an increase in use of adhesives by the vehicle makers. General Motors has begun allowing the use of adhesive on several outer body panels. In General Motors technical service bulletin #02-08-98-001, GM provides specific recommendations regarding the use of adhesive on roof panels, door skins, quarter panels, and rear body panels on specific vehicles. Using adhesives on GM vehicles without specific procedures is a business decision.

> Weld-bonding is also another method of panel replacement that may be recommended by the vehicle maker. Weld-bonding is the combination of using STRSW or GMA (MIG) plug welds along with adhesive to attach an exterior body panel.

> When weld-bonding, DaimlerChrysler recommends "to replace any suspected adhesive with a two-component, corrosion inhibiting, epoxy structural adhesive when any repairs are made, providing the STRSW process is applicable. The adhesive must meet or exceed Chrysler MS CD507."

> Vehicle makers that have specific recommendations against the use of adhesives on their vehicles include:
>   • Toyota
>   • Ford

> Honda/Acura recommends to "repair at factory seams with the same procedure as the factory assembly process except where specified otherwise in the Honda And Acura Body Repair Manuals. Please note that the door skin is welded at the top of the skin, and is glued around the crimp."

> As previously mentioned, using adhesives on any vehicle not discussed in this section is a business decision. It is important to note, however, that almost all vehicle makers allow the use of adhesive for installing door skins.

but also in their Adhesive Bonding (ADH01) training course, where they specifically call out bonding for roof skin replacement on Screen A4 of Module 2.

18.  According to John Eagle's corporate representative, in sworn testimony taken on July 7, 2017, State Farm dictated to John Eagle how the car was to be repaired, i.e., to use adhesive rather than spot welding. Furthermore, according to John Eagle's corporate representative, State Farm can "trump" the OEM (Honda) specifications because the repair facility needs to get paid. However, profits should never trump safety.



1          A.   I do not have personal knowledge.

2          Q.   All right.  Do you know the -- when you say

3    that it was a 3M 8115 product, is that because that's

4    what was customary within John Eagle Collision Center

5    back in the 2012 time period?

6          A.   It is -- it is a accepted repair alternative,

7    based on our cars and insurance certifications.

8          Q.   All right.  And let's have an agreement today

9    that we don't use the word "insurance."  Can we -- is

10   that cool?

11         A.   Well, unfortunately we're guided by

12   insurance.  So -- the -- if you brought your car into

13   my shop, right, the insurance company's going to

14   dictate what -- how we're going to repair your car.

15         Q.   I understand.  But the -- but you -- your --

16   as a certified body shop, you have to -- you -- the --

17   the insurance company cannot trump the OEM

18   specifications, correct, sir?

19         A.   Yes, they can.

20         Q.   Where does it say that?

21         A.   By not paying the bill.

22         Q.   Well, I understand.  But where does it say

23   that with the -- because you have a contract with the

24   vehicle manufacturers when you're a certified body

25   shop, correct?

19.   With respect to State Farm, below is the repair estimate:



Date:   8/31/2012 05:27 PM
Estimate ID:   43-1D27-28901
Estimate Version:   3
Supplement:   3 (F F)   8/31/2012 05:21:56 PM
Profile ID:   * Dallas Metro North

## State Farm Insurance Companies

ANY SUPPLEMENT REQUESTS ARE TO BE FAXED TO STATE FARM AT 866-418-5736

Damage Assessed By:   RANDY HICKS          Appraised For:   Cat Auto TX Dallas
                                                           (800) 732-5246
Supplemented By:   Neil Mayfarth (TX)

Type of Loss:   Comprehensive
Date of Loss:   6/13/2012
Deductible:   200.00
Claim Number:   43-1D27-28901

Insured:
Owner:
Address:
Telephone:

Mitchell Service:   911131

Description:   2010 Honda Fit Sport
Body Style:   4D HB                              Drive Train:   1.5L Inj 4 Cyl 5A FWD
VIN:   JHMGE8H43AC006993                         License:   BK35978 TX
Mileage:   24,398
OEM/ALT:   O                                     Search Code:   None
Color:   BLUE
Options:   PASSENGER AIRBAG, DRIVER AIRBAG, POWER LOCK, POWER WINDOW, REAR WINDOW DEFOGGER
MANUAL AIR CONDITION, CRUISE CONTROL, TILT STEERING COLUMN
TELESCOPIC STEERING COLUMN, ANTI-LOCK BRAKE SYS., FOG LIGHTS, ALUM/ALLOY WHEELS
AUXILIARY INPUT, LEATHER STEERING WHEEL, FRONT AIR DAM, TINTED GLASS
TRIP COMPUTER, VARIABLE ASSISTED STEERING, SIDE AIRBAGS, ANTI-THEFT SYSTEM
SIDE HEAD CURTAIN AIRBAGS, DAYTIME RUNNING LIGHTS, AM/FM STEREO CD/MP3 PLAYER
FRONT BUCKET SEATS, INTERIOR AIR FILTER, KEYLESS ENTRY SYSTEM, REAR WINDOW WIPER
STEERING WHEEL AUDIO CONTROLS

| Line Item | Entry Number | Labor Type | Operation | Line Item Description | Part Type/ Part Number | Dollar Amount | Labor Units |
|---|---|---|---|---|---|---|---|
| S3 1 | 100992 | BDY | REMOVE/REPLACE | Inform Label Air Cond Caution | 80050-TK6-H00 | 1.73 | 0.1* |
| S3 2 | 100998 | BDY | REMOVE/REPLACE | Inform Label Specification | 42762-TK6-A01 | 2.53 | 0.1* |
| S3 3 | 100995 | BDY | REMOVE/REPLACE | Inform Label Fuse Identification | 38205-TK6-A00 | 2.02 | 0.1* |
| 4 | 100751 | BDY | REMOVE/INSTALL | Frt Bumper Cover | | | INC |
| 5 | 101204 | BDY | REMOVE/INSTALL | Grille Assy | | | INC # |
| 6 | 101207 | BDY | CHECK/ADJUST | Headlamps | | | 0.4 |
| 7 | 101205 | BDY | REMOVE/INSTALL | R Front Combination Lamp | | | 0.3 # |
| 8 | 101206 | BDY | REMOVE/INSTALL | L Front Combination Lamp | | | INC # |
| 9 | 102033 | BDY | REMOVE/REPLACE | Hood Panel (HSS) | 60100-TK6-A92ZZ | 282.43 | 1.1 |
| 10 | AUTO | REF | REFINISH | Hood Outside | | | C 2.4 |
| 11 | AUTO | REF | REFINISH | Add For Hood Underside | | | C 1.2 |
| S2 12 | 100387 | BDY | REMOVE/REPLACE | R Hood Hinge Cover | 74222-TK6-A00 | 9.87 | 0.2 # |
| S2 13 | AUTO | BDY | REMOVE/INSTALL | Hood Assy | | | INC |
| S2 14 | AUTO | BDY | REMOVE/INSTALL | Cowl Panel Assy | | | INC # |
| S2 15 | 100388 | BDY | REMOVE/REPLACE | L Hood Hinge Cover | 74212-TK6-A00 | 8.20 | 0.2 # |
| 16 | 100170 | BDY | REMOVE/INSTALL | Hood Insulator | Existing | | INC r |
| 17 | 102719 | BDY | REMOVE/INSTALL | Hood Air Intake Duct | Existing | | INC r |
| S2 18 | 100356 | REF | BLEND | R Fender Outside | | | C 0.8 |

ESTIMATE RECALL NUMBER: 06/22/2012 17:54:12 43-1D27-28901
Mitchell Data Version:   OEM: AUG_12_V

Software Version:   7.0.480

Copyright (C) 1994 - 2012 Mitchell International          Page  1  of  5
All Rights Reserved

| | | | Date: | 8/31/2012 05:27 PM |
|---|---|---|---|---|
| | | | Estimate ID: | 43-1D27-28901 |
| | | | Estimate Version: | 3 |
| | | | Supplement: | 3 (F F)  8/31/2012 05:21:56 PM |
| | | | Profile ID: | * Dallas Metro North |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| S2 19 | AUTO | BDY | PAINTLESS REPAIR | R Fender Panel (HSS) | Sublet | 225.00 * | 0.0* # |
| S2 20 | 101524 | BDY | REMOVE/REPLACE | L Fender Panel (HSS) | 60261-TK6-A90ZZ | 200.97 | 2.8 # |
| 21 | AUTO | REF | REFINISH | L Fender Outside | | C | 1.6 |
| 22 | AUTO | REF | REFINISH | L Add To Edge Fender | | C | 0.5 |
| S2 23 | 101527 | BDY | REMOVE/INSTALL | R Fender Liner | Existing | | 0.3  r |
| S2 24 | 101528 | BDY | REMOVE/INSTALL | L Fender Liner | Existing | | INC  r |
| 25 | 102863 | BDY | REMOVE/INSTALL | R Fender Garnish | Existing | | INC #r |
| 26 | 102864 | BDY | REMOVE/INSTALL | L Fender Garnish | Existing | | INC #r |
| S2 27 | 100125 | MCH | REMOVE/REPLACE | Disable & Enable Air Bag System     -M | | | 0.3 |
| S3 28 | 100961 | GLS | REMOVE/REPLACE | W/Shield Glass | Sublet | 306.12 * | 0.0* # |
| 29 | | | | W/S Broken on R/I Allowed at cost | | | |
| 30 | | | | Per Accurate Glass Invoice | | | |
| S3 31 | 100962 | BDY | REMOVE/REPLACE | W/Shield Adhesive | N.A. | | INC* |
| S2 32 | 100963 | BDY | REMOVE/REPLACE | W/Shield Moulding | 73150-TF0-003 | 30.98 | |
| S2 33 | 101464 | BDY | REMOVE/REPLACE | R Otr Upr W/Shield Dam | 73127-TF0-000 | 3.78 | |
| S2 34 | 100472 | BDY | REMOVE/REPLACE | L Otr Upr W/Shield Dam | 73127-TF0-000 | 3.78 | |
| S2 35 | 100473 | BDY | REMOVE/REPLACE | Ctr Upr W/Shield Dam | 73126-TF0-000 | 5.70 | |
| S2 36 | 100363 | BDY | REMOVE/REPLACE | R W/Shield Dam | 73129-TF0-000 | 6.03 | |
| S2 37 | 100364 | BDY | REMOVE/REPLACE | L W/Shield Dam | 73129-TF0-000 | 6.03 | |
| S2 38 | 100474 | BDY | REMOVE/REPLACE | Lwr W/Shield Dam | 73128-TK6-000 | 14.12 | |
| S2 39 | 101833 | BDY | REMOVE/REPLACE | R W/Shield Wiper Blade Arm | 76610-TK6-A01 | 46.37 | INC # |
| S2 40 | 101843 | BDY | REMOVE/REPLACE | Cowl/Dash Panel Assy | 74219-TK6-A00 | 177.15 | 0.8 # |
| S2 41 | 100158 | MCH | REMOVE/INSTALL | Instrument Panel Assy     -M | | | 4.5 |
| S2 42 | 900500 | BDY * | ADD'L LABOR OP | Clean/remove glass chards | Existing | | 1.0* |
| S2 43 | 100159 | BDY | REMOVE/INSTALL | Console | | | 0.5 |
| S2 44 | 100642 | REF | REFINISH | R Roof Rail | | C | 1.6 # |
| S2 45 | 900500 | BDY * | REPAIR | Right Roof Rail | Existing | | 12.0* |
| S2 46 | 100643 | REF | REFINISH | L Roof Rail | | C | 1.6 # |
| S2 47 | 900500 | BDY * | REPAIR | L Roof Rail | Existing | | 10.0* |
| 48 | 102701 | BDY | REMOVE/INSTALL | R Rocker Moulding | | | 0.4 |
| 49 | 102702 | BDY | REMOVE/INSTALL | L Rocker Moulding | | | 0.4 |
| S2 50 | 102439 | BDY | REMOVE/INSTALL | R Frt Rocker Scuff Plate | Existing | | INC #r |
| S2 51 | 102440 | BDY | REMOVE/INSTALL | L Frt Rocker Scuff Plate | Existing | | INC #r |
| S2 52 | 101032 | BDY | REMOVE/INSTALL | R Lwr Ctr Pillar Trim Panel | Existing | | 0.6 #r |
| S2 53 | 101033 | BDY | REMOVE/INSTALL | L Lwr Ctr Pillar Trim Panel | Existing | | 0.6 #r |
| S2 54 | 102500 | BDY | REMOVE/INSTALL | R Rear Rocker Scuff Plate | Existing | | INC  r |
| S2 55 | 102501 | BDY | REMOVE/INSTALL | L Rear Rocker Scuff Plate | Existing | | INC  r |
| S2 56 | 101042 | BDY | REMOVE/REPLACE | Floor Carpet | 83301-TK6-A11ZA | 440.02 | 1.0* |
| S2 57 | 100339 | BDY | REMOVE/INSTALL | R Pillar Glass | | | 1.5 # |
| S2 58 | 900500 | BDY * | REMOVE/REPLACE | Pillar glass adhesive | New | 15.00 * | 0.0* |
| S2 59 | 100340 | BDY | REMOVE/INSTALL | L Pillar Glass | | | 1.5 # |
| S2 60 | 900500 | BDY * | REMOVE/REPLACE | Pillar glass adhesive | New | 15.00 * | 0.0* |
| S2 61 | 101030 | BDY | REMOVE/REPLACE | R Pillar Window Seal | 73335-TF0-000 | 4.42 | |
| S2 62 | 101031 | BDY | REMOVE/REPLACE | L Pillar Window Seal | 73335-TF0-000 | 4.42 | |
| S2 63 | 101051 | BDY | REMOVE/REPLACE | R Lwr Pillar Window Seal | 73337-TF0-000 | 4.42 | |
| S2 64 | 101052 | BDY | REMOVE/REPLACE | L Lwr Pillar Window Seal | 73337-TF0-000 | 4.42 | |
| S2 65 | 100628 | BDY | REMOVE/INSTALL | R Frt Seat Assy | | | 0.3 |
| S2 66 | 100629 | BDY | REMOVE/INSTALL | L Frt Seat Assy | | | 0.3 |
| S2 67 | 100630 | BDY | REMOVE/INSTALL | R Rear Seat Assy | | | 0.3 |
| S2 68 | 100631 | BDY | REMOVE/INSTALL | L Rear Seat Assy | | | 0.3 |
| S2 69 | 101685 | BDY | REPAIR | L Frt Door Shell (HSS) | Existing | | 4.0* # |
| 70 | AUTO | REF | REFINISH | L Frt Door Outside | | C | 1.7 |
| S2 71 | 101687 | BDY | REPAIR | R Frt Door Panel Panel (HSS) | Existing | | 5.0* # |
| 72 | AUTO | REF | REFINISH | R Frt Door Outside | | C | 1.9 |
| 73 | 101660 | BDY | REMOVE/REPLACE | R Frt Otr Door Belt Moulding | 72410-TF0-003 | 31.07 | 0.2 # |
| 74 | AUTO | BDY | REMOVE/INSTALL | R Frt Door Garnish | | | 0.2 |
| 75 | 101661 | BDY | REMOVE/REPLACE | L Frt Otr Door Belt Moulding | 72450-TF0-003 | 31.07 | 0.2 # |
| 76 | AUTO | BDY | REMOVE/INSTALL | L Frt Door Garnish | | | 0.2 |
| 77 | 101581 | REF | BLEND | R Rear Door Outside | | C | 0.8 |

ESTIMATE RECALL NUMBER: 06/22/2012 17:54:12 43-1D27-28901
Mitchell Data Version:   OEM: AUG_12_V

Copyright (C) 1994 - 2012 Mitchell International
All Rights Reserved

Software Version:        7.0.480

Page   2   of   5

| | | | | | | Date: | 8/31/2012 05:27 PM |
| | | | | | | Estimate ID: | 43-1D27-28901 |
| | | | | | | Estimate Version: | 3 |
| | | | | | | Supplement: | 3 (F F)  8/31/2012 05:21:56 PM |
| | | | | | | Profile ID: | * Dallas Metro North |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 78 | AUTO | BDY | PAINTLESS REPAIR | R Rear Door Shell (HSS) | Sublet | 125.00 * | 0.0* |
| | 79 | 101795 | BDY | REPAIR | L Rear Door Shell (HSS) | Existing | | 2.5* |
| | 80 | AUTO | REF | REFINISH | L Rear Door Outside | | C | 1.6 |
| | 81 | 101752 | BDY | REMOVE/REPLACE | R Rear Otr Door Belt Moulding | 72910-TF0-003 | 27.97 | 0.2 # |
| | 82 | AUTO | BDY | REMOVE/INSTALL | R Rear Door Pillar Frame Mldg | | | 0.2 |
| | 83 | 101753 | BDY | REMOVE/REPLACE | L Rear Otr Door Belt Moulding | 72950-TF0-003 | 27.97 | 0.2 # |
| | 84 | 100592 | BDY | REMOVE/INSTALL | R Roof Moulding | | | 0.4 |
| | 85 | 100593 | BDY | REMOVE/INSTALL | L Roof Moulding | | | 0.4 |
| S3 | 86 | 100850 | BDY | REMOVE/REPLACE | Roof Panel (HSS) | 62100-TK6-A00ZZ | 451.95 | 14.0* # |
| | 87 | AUTO | REF | REFINISH | Roof Panel Outside | | C | 2.1 |
| | 88 | AUTO | MCH | REMOVE/REPLACE | Add w/Side Curtain Air Bag        -M | | | 2.2 |
| | 89 | | | | W/S replacement labor time deducted | | | |
| | 90 | 100570 | REF | BLEND | R Quarter Panel Outside | | C | 1.0 |
| S2 | 91 | AUTO | BDY | PAINTLESS REPAIR | R Quarter Outer Panel (HSS) | Sublet | 225.00 * | 0.0* # |
| S2 | 92 | 100279 | BDY | REPAIR | L Quarter Outer Panel (HSS) | Existing | | 3.0* # |
| S2 | 93 | AUTO | REF | REFINISH | L Quarter Panel Outside | | C | 2.0 |
| | 94 | 100568 | GLS | REMOVE/INSTALL | R Quarter Glass | | | 2.0 # |
| | 95 | 100569 | GLS | REMOVE/INSTALL | L Quarter Glass | | | 2.0 # |
| S2 | 96 | 102007 | BDY | REMOVE/REPLACE | Qtr Glass Adhesive | N.A. | 15.00 * | |
| S2 | 97 | 102007 | BDY | REMOVE/REPLACE | Qtr Glass Adhesive | N.A. | 15.00 * | |
| | 98 | 100566 | BDY | REMOVE/INSTALL | Liftgate Assy | | | 0.9 |
| S2 | 99 | AUTO | BDY | PAINTLESS REPAIR | Liftgate Shell | Sublet | 100.00 * | 0.0* # |
| | 100 | 100350 | BDY | REMOVE/INSTALL | R Rear Combination Lamp | | | 0.3 |
| | 101 | 100351 | BDY | REMOVE/INSTALL | L Rear Combination Lamp | | | 0.3 |
| | 102 | 100346 | BDY | REMOVE/INSTALL | Rear Bumper Cover | | | 1.0 |
| | 103 | AUTO | REF | ADD'L OPR | Clear Coat | | | 3.1 |
| S1 | 104 | 933005 | REF * | ADD'L OPR | RESTORE CORROSION PROTECTION | | | 1.0* |
| S1 | 105 | 900500 | REF * | REFINISH/REPAIR | DENIB AND FINESSE | Existing | | 0.4* |
| S1 | 106 | 900500 | REF * | REMOVE/REPLACE | Car Cover | New | 0.00 * | 0.2* |
| S2 | 107 | 933024 | GLS | ADD'L OPR | Broken Glass Cleanup | | | 1.0* |
| | 108 | AUTO | | ADD'L COST | Paint/Materials | | 650.00 * | |
| | 109 | AUTO | | ADD'L COST | Hazardous Waste Disposal | | 3.00 * | |

* - Judgment Item
# - Labor Note Applies
C - Included in Clear Coat Calc
r - CEG R&R Time Used For This Labor Operation
Paintless Dent Repair amounts are based on a user defined matrix.

Remarks

Supplement written at shop reviewed with Alison

ESTIMATE RECALL NUMBER: 06/22/2012 17:54:12  43-1D27-28901
Mitchell Data Version:    OEM:  AUG_12_V

Software Version:        7.0.480

Copyright (C) 1994 - 2012 Mitchell International
All Rights Reserved

Page   3   of   5

Plaintiffs' Complaint
Page 13 of 26

Date:            8/31/2012 05:27 PM
Estimate ID:     43-1D27-28901
Estimate Version: 3
Supplement:      3 (F F)  8/31/2012 05:21:56 PM
Profile ID:      * Dallas Metro North

## Estimate Totals

| I. Labor Subtotals | Units | Rate | Add'l Labor Amount | Sublet Amount | Totals | II. Part Replacement Summary | | | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Body | 70.3 | 42.00 | 0.00 | 675.00 | 3,627.60 | Taxable Parts | | | 1,889.42 |
| Refinish | 25.5 | 42.00 | 0.00 | 0.00 | 1,071.00 | Sales Tax | @ | 8.250% | 155.88 |
| Glass | 5.0 | 42.00 | 0.00 | 0.00 | 210.00 | | | | |
| Mechanical | 7.0 | 85.00 | 0.00 | 0.00 | 595.00 | Non-Taxable Parts | | | 306.12 |
| Non-Taxable Labor | | | | | 5,503.60 | Total Replacement Parts Amount | | | 2,351.42 |
| Labor Summary | 107.8 | | | | 5,503.60 | | | | |

| III. Additional Costs | | | Amount | IV. Adjustments | | Amount |
|---|---|---|---|---|---|---|
| Taxable Costs | | | 650.00 | Insurance Deductible | | 200.00- |
| Sales Tax | @ | 8.250% | 53.63 | | | |
| Non-Taxable Costs | | | 3.00 | Customer Responsibility | | 200.00- |
| Total Additional Costs | | | 706.63 | | | |

Paint Material Method: Rates
Init Rate = 30.00 , Init Max Hours = 99.9, Addl Rate = 0.00

| | | Amount |
|---|---|---|
| I. | Total Labor: | 5,503.60 |
| II. | Total Replacement Parts: | 2,351.42 |
| III. | Total Additional Costs: | 706.63 |
| | Gross Total: | 8,561.65 |
| IV. | Total Adjustments: | 200.00- |
| | Net Total: | 8,361.65 |
| | Less Original Net Total: | 4,781.04 |
| | Net Supplement Amount: | 3,580.61 |
| | S1:  RANDY HICKS | 79.11 |
| | S2:  GLENDA WHITE | 3,230.84 |
| | S3:  Neil Mayfarth (TX) | 270.66 |

Point(s) of Impact

16 Non-Collision (P)

Inspection Date:   6/22/2012

Body Shop:   John Eagle Collision Center
             6125 Peeler St.
             Dallas, TX 75235
Telephone:   (214) 353-3570
Fax Phone:   (214) 353-3574

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This is an estimate. Repair facilities must inspect the vehicle
to determine if any repairs not listed are required, and to
contact State Farm before making such repairs. Repairer also is
responsible for conducting any necessary inspection and safety
ESTIMATE RECALL NUMBER: 06/22/2012 17:54:12 43-1D27-28901
Mitchell Data Version:  OEM: AUG_12_V

Copyright (C) 1994 - 2012 Mitchell International
All Rights Reserved

Software Version:      7.0.480

Page   4   of   5

20.   Below are John Eagle documents regarding the repairs, and close attention should be paid to the $3,580.31 discount that John Eagle gave to the Defendant:


JOHN EAGLE COLLISION CENTER
6125 PEELER ST. DALLAS, TX 75235   800.406.2344

CELL: 214-821-9317

| CUSTOMER NO. 61637 | | ADVISOR ALISON HUBER 1681 | TAG NO. 1649 | INVOICE DATE 08/30/12 | INVOICE NO. HOCB749800 |
|---|---|---|---|---|---|
| | LABOR RATE | LICENSE NO. BK35978 | MILEAGE 24,586 | COLOR TIDWTR BLUE | STOCK NO. H10-346 |
| | YEAR / MAKE / MODEL 10/HONDA/FIT/4DR HB L4 SPORT AT | | | DELIVERY DATE 11/18/09 | DELIVERY MILES 6 |
| | VEHICLE I.D. NO. J H M G E 8 H 4 3 A C 0 0 6 9 9 3 | P.O. NO. | | SELLING DEALER NO. P48926 | PRODUCTION DATE |
| | F.T.E. NO. | | | R.O. DATE 07/17/12 | |
| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS E# L15A7-3856274 | | | MO: 24586 |

LABOR & PARTS

J# 1 62HOZ       BODY REPAIR PROCESS          TECH(S):1712 1873       2916.90
BODY REPAIR PER ESTIMATE
COMPLETED BODY REPAIR PER ESTIMATE

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| JOB # 1 | 1 | 80050-TK6-H00 | LABEL 0000000 | 1.73 | 1.73 |
| JOB # 1 | 1 | 38205-TK6-A00 | LABEL, FU 0000000 | 2.02 | 2.02 |
| JOB # 1 | 1 | 60100-TK6-A92ZZ | HOOD, ENG 0000000 | 282.43 | 282.43 |
| JOB # 1 | 1 | 72410-TF0-003 | MOLDING, 0000000 | 31.07 | 31.07 |
| JOB # 1 | 1 | 72450-TF0-003 | MOLDING, 0000000 | 31.07 | 31.07 |
| JOB # 1 | 1 | 72910-TF0-003 | MOLDING, 0000000 | 27.97 | 27.97 |
| JOB # 1 | 1 | 72950-TF0-003 | MOLDING, 0000000 | 27.97 | 27.97 |
| JOB # 1 | 1 | 62100-TK6-A00ZZ | PANEL, RO 0000000 | 451.95 | 451.95 |
| JOB # 1 | 1 | 17277-RP3-A01 | LABEL,INF 0000000 | 4.23 | 4.23 |
| JOB # 1 | 1 | 74222-TK6-A00 | COVER 0000000 | 9.87 | 9.87 |
| JOB # 1 | 1 | 74212-TK6-A00 | COVER 0000000 | 8.20 | 8.20 |
| JOB # 1 | 1 | 60261-TK6-A90ZZ | PANEL, L. 0000000 | 200.97 | 200.97 |
| JOB # 1 | 1 | 73150-TF0-003 | MLDG, FR. 0000000 | 30.98 | 30.98 |
| JOB # 1 | 2 | 73127-TF0-000 | RUBBER B, 0000000 | 3.78 | 7.56 |
| JOB # 1 | 1 | 73126-TF0-000 | RUBBER A, 0000000 | 5.70 | 5.70 |
| JOB # 1 | 2 | 73129-TF0-000 | RUBBER D, 0000000 | 6.03 | 12.06 |
| JOB # 1 | 1 | 73128-TK6-000 | RUBBER C, 0000000 | 14.12 | 14.12 |
| JOB # 1 | 1 | 76730-S2X-003 | BLADE, WS 0000000 | 18.02 | 18.02 |
| JOB # 1 | 1 | 76610-TK6-A01 | ARM, WSW 0000000 | 46.37 | 46.37 |
| JOB # 1 | 1 | 74219-TK6-A00 | COWL TOP 0000000 | 177.15 | 177.15 |
| JOB # 1 | 1 | 83301-TK6-A01ZA | CARPET N 0000000 | 440.02 | 440.02 |
| JOB # 1 | 2 | 73335-TF0-000 | SEAL A 0000000 | 4.42 | 8.84 |
| JOB # 1 | 2 | 73337-TF0-000 | SEAL B 0000000 | 4.42 | 8.84 |
| JOB # 1 | 1 | 73334-TF0-000 | RUB, WIND 0000000 | 10.60 | 10.60 |
| JOB # 1 | 1 | 73384-TF0-000 | RUBBER, L 0000000 | 9.03 | 9.03 |
| JOB # 1 | 1 | 73810-TF0-003 | GARNISH, 0000000 | 18.03 | 18.03 |
| JOB # 1 | 1 | 73850-TF0-003 | GARNISH, 0000000 | 18.03 | 18.03 |
| JOB # 1 | 2 | 73336-TF0-000 | RUBBER B 0000000 | 9.67 | 19.34 |
| JOB # 1 | 2 | 73335-TF0-000 | SEAL A 0000000 | 4.42 | 8.84 |
| JOB # 1 | 2 | 73337-TF0-000 | SEAL B 0000000 | 4.42 | 8.84 |
| JOB # 1 | 1 | 83240-SNA-A11ZC | GRAB RAIL 0000000 | 11.70 | 11.70 |
| JOB # 1 | 2 | 88217-TA0-A02ZC | HOLDER N 0000000 | 2.60 | 5.20 |

                                            JOB # 1 TOTAL PARTS       1958.75

                                            JOB # 1 TOTAL LABOR & PARTS   4875.65

J# 2 62HOZ000    PAINT PROCESS          TECH(S):1712 1884       1060.50
PAINT PER ESTIMATE
COMPLETED PAINT PER ESTIMATE

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| | | | JOB # 2 TOTAL PARTS | | 0.00 |

                                            JOB # 2 TOTAL LABOR & PARTS   1060.50

J# 3 62HOZ000    DETAIL PROCESS          TECH(S):1999       0.00
DETAIL VEHICLE
COMPLETED DETAIL

PROGRAM CODE   AUTHORIZATION NUMBER   COMMITMENT NUMBER

AUTHORIZED SIGNATURE AND DATE

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES OF FORD.

(SIGNED) DEALER, GENERAL MANAGER, OR AUTHORIZED PERSON          (DATE)

NOTICE PURSUANT TO §70.001, TEXAS PROPERTY CODE

I AM THE PERSON OR AN AGENT ACTING ON BEHALF OF THE PERSON WHO IS OBLIGATED TO PAY FOR THE REPAIR OF THE MOTOR VEHICLE SUBJECT TO THE REPAIR CONTRACT. I UNDERSTAND THAT THIS VEHICLE IS SUBJECT TO REPOSSESSION IN ACCORDANCE WITH §9.503 TEXAS BUSINESS AND COMMERCE CODE. IF A WRITTEN ORDER PAYMENT FOR REPAIR ON THE VEHICLE IS STOPPED, DISHONORED BECAUSE OF INSUFFICIENT FUNDS, NO FUNDS, OR BECAUSE THE DRAWER OR MAKER OF THE ORDER HAS NO ACCOUNT OR THE ACCOUNT ON WHICH IT IS DRAWN HAS BEEN CLOSED.

Signature of Person Responsible or Agent To Person Responsible

Reynolds and Reynolds  ERARTVINE  8F041782 Q (03/07)

PAGE 1 OF 3          CUSTOMER COPY          [CONTINUED ON NEXT PAGE]   10:38am

# JOHN EAGLE COLLISION CENTER

6125 PEELER ST. DALLAS, TX 75235   800.406.2344

CELL: 214-821-9317

| CUSTOMER NO. 61637 | ADVISOR ALISON HUBER | 1681 | TAG NO. 1649 | INVOICE DATE 08/30/12 | INVOICE NO. HOCB749800 |
|---|---|---|---|---|---|
| | LABOR RATE | LICENSE NO. BK35978 | MILEAGE 24,586 | COLOR TIDWTR BLUE | STOCK NO. H10-346 |
| | YEAR / MAKE / MODEL 10/HONDA/FIT/4DR HB L4 SPORT AT | | | DELIVERY DATE 11/18/09 | DELIVERY MILES 6 |
| | VEHICLE I.D. NO. J H M G E 8 H 4 3 A C 0 0 6 9 9 3 | | | SELLING DEALER NO. P48926 | PRODUCTION DATE |
| | F.T.E. NO. | | P.O. NO. | R.O. DATE 07/17/12 | |
| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS E# L15A7-3856274 | | | MO: 24586 |

```
PARTS-----QTY--FP-NUMBER----------------DESCRIPTION-----------------UNIT PRICE----
                                           JOB #  3 TOTAL PARTS        0.00

                                 JOB #  3 TOTAL LABOR & PARTS          0.00

J# 4+62HOZ004        MECHANICAL PROCESS          TECH(S):1313          595.00
         COMPLETED REPAIR

PARTS-----QTY--FP-NUMBER----------------DESCRIPTION-----------------UNIT PRICE----
                                           JOB #  4 TOTAL PARTS        0.00

                                 JOB #  4 TOTAL LABOR & PARTS        595.00

SUBLET----PO#-----VEND INV#-INV.DATE-DESCRIPTION----------------------------------
JOB # 1    599590            08/09/12 HAIL/523                        562.60
JOB # 1    599616            08/10/12 GLASS/9606                      356.25
JOB # 1    599855            08/17/12 GLASS/9625                      306.12
                                           TOTAL - SUBLET           1224.97

G.O.G. & SUPPLIES-----------------------------------------------------------------
JOB # 2    1.0  PAINT AND MATERIALS      @   650.000   /UNIT          650.00
                                           TOTAL - GOG               650.00

MISC------CODE--------DESCRIPTION-------------------CONTROL NO------
JOB # 1         BR   DUE FROM INS COMPANY          749800           -306.12
JOB # 1         BR   DUE FROM INS COMPANY          749800          -3230.84
JOB # 1         PAP  DENIB AND POLISH                                -43.35
JOB # 3         DT   B/S DETAIL                                       19.00
                                           TOTAL - MISC            -3561.31

ESTIMATE--------------------------------------------------------------------------
CUSTOMER HEREBY ACKNOWLEDGES RECEIVING
        ORIGINAL ESTIMATE OF  $8290.99 (+TAX)
COMMENTS--------------------------------------------------------------------------
STATE FARM 43-1027-28901
306.12 WINDSHIELD
```

| PROGRAM CODE | AUTHORIZATION NUMBER | COMMITMENT NUMBER |
|---|---|---|
| | AUTHORIZED SIGNATURE AND DATE | |

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES OF FORD.

(SIGNED) DEALER, GENERAL MANAGER, OR AUTHORIZED PERSON          (DATE)

NOTICE PURSUANT TO §70.001, TEXAS PROPERTY CODE

I AM THE PERSON OR AN AGENT ACTING ON BEHALF OF THE PERSON WHO IS OBLIGATED TO PAY FOR THE REPAIR OF THE MOTOR VEHICLE SUBJECT TO THE REPAIR CONTRACT. I UNDERSTAND THAT THIS VEHICLE IS SUBJECT TO REPOSSESSION IN ACCORDANCE WITH 60.503 TEXAS BUSINESS AND COMMERCE CODE. IF A WRITTEN ORDER PAYMENT FOR REPAIR ON THE VEHICLE IS STOPPED, DISHONORED BECAUSE OF INSUFFICIENT FUNDS, NO FUNDS, OR BECAUSE THE DRAWER OR MAKER OF THE ORDER HAS NO ACCOUNT OR THE ACCOUNT ON WHICH IT IS DRAWN HAS BEEN CLOSED.

Signature of Person Responsible or Agent To Person Responsible

PAGE 2 OF 3          CUSTOMER COPY          [CONTINUED ON NEXT PAGE]   10:38am

Reynolds and Reynolds  ERAINTINVE  SF641752 Q (03/07)



## JOHN EAGLE COLLISION CENTER

6125 PEELER ST. DALLAS, TX 75235   800.406.2344

CELL: 214-821-9317

| CUSTOMER NO. 61637 | | | ADVISOR ALISON HUBER | | TAG NO. 1681 | 1649 | INVOICE DATE 08/30/12 | INVOICE NO. HOCB749800 |
| LABOR RATE | LICENSE NO. BK35978 | MILEAGE 24,586 | COLOR TIDWTR BLUE | | | STOCK NO. H10-346 | | |
| YEAR / MAKE / MODEL 10/HONDA/FIT/4DR HB L4 SPORT AT | | | | | | DELIVERY DATE 11/18/09 | | DELIVERY MILES 6 |
| VEHICLE I.D. NO. J H M G E 8 H 4 3 A C 0 0 6 9 9 3 | | | | SELLING DEALER NO. P48926 | | PRODUCTION DATE | |
| R.T.E. NO. | | P.O. NO. | | R.O. DATE 07/17/12 | | | |
| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS E# L15A7-3856274 | | | | MO: 24586 | |

TOTALS·····

```
JOHN EAGLE EXPRESS SERVICE NOW OPEN          TOTAL LABOR....     4572.40
OPEN LATE UNTIL 7PM M-F                       TOTAL PARTS...      1958.75
OPEN 8AM - 5PM SATURDAY                       TOTAL SUBLET...     1224.97
                                              TOTAL G.O.G....      650.00
TRY OUR NEW EXPRESS SERVICE                   TOTAL MISC CHG.       19.00
THANK YOU FOR YOUR BUSINESS                   TOTAL MISC DISC    -3580.31
                                              TOTAL TAX......      215.23
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx                   ·········
                                              TOTAL INVOICE $    5060.04
IF YOU WERE NOT COMPLETELY SATISFIED WITH YOUR SERVICE
EXPERIENCE PLEASE CALL 214-390-5517
ASK FOR A SERVICE MANAGER.

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
```

| PROGRAM CODE | AUTHORIZATION NUMBER | COMMITMENT NUMBER |

AUTHORIZED SIGNATURE AND DATE

CUSTOMER SIGNATURE

************************     D U P L I C A T E   I N V O I C E     **************************

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES OF FORD.

(SIGNED) DEALER, GENERAL MANAGER, OR AUTHORIZED PERSON        (DATE)

NOTICE PURSUANT TO §70.001, TEXAS PROPERTY CODE

I AM THE PERSON OR AN AGENT ACTING ON BEHALF OF THE PERSON WHO IS OBLIGATED TO PAY FOR THE REPAIR OF THE MOTOR VEHICLE SUBJECT TO THE REPAIR CONTRACT. I UNDERSTAND THAT THIS VEHICLE IS SUBJECT TO REPOSSESSION IN ACCORDANCE WITH §9.503 TEXAS BUSINESS AND COMMERCE CODE. IF A WRITTEN ORDER PAYMENT FOR REPAIR ON THE VEHICLE IS STOPPED, DISHONORED BECAUSE OF INSUFFICIENT FUNDS, NO FUNDS, OR BECAUSE THE DRAWER OR MAKER OF THE ORDER HAS NO ACCOUNT OR THE ACCOUNT ON WHICH IT IS DRAWN HAS BEEN CLOSED.

Signature of Person Responsible or Agent To Person Responsible

Reynolds and Reynolds  ERAINT0WE  8F641782 Q (9.9/3/17)

## IV. Cause(s) of Action as to Defendant

21.   In Texas, "Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others." *Midwest Emp'rs Cas. Co. ex rel. English v. Harpole,* 293 S.W.3d 770, 776 (Tex.App. – San Antonio 2009, no pet.)(citations omitted).

22.   Vehicle manufacturers sell safety. Vehicle manufacturers spend hundreds of millions of dollars each year developing, designing, engineering, manufacturing, and testing their vehicles so that they will be crashworthy in the event of foreseeable accidents.

23.   Collision Repair Centers sell expertise in how to safely repair cars. In fact, these certified facilities tout how they follow OEM specifications and will restore your vehicle to better than it was before the accident.

24.   Vehicle insurance companies like State Farm sell insurance. They are not in the business of designing vehicles, or testing vehicles, or repairing vehicles.

25.   No insurance company should ever dictate to a collision repair center or body shop how to repair a vehicle. To do so is extremely negligent, and shows a wanton disregard for human life and the safety of others.

26.   Collision repair centers/body shops should always follow the vehicle manufacturer's procedures/OEM repair specifications and should never be coerced or enticed by an insurance company to cut corners, take safety shortcuts, or do anything that jeopardizes members of the motoring public.

27.   Indeed, I-Car, which stands for the Inter-Industry Conference on Auto Collision Repair, is the industry standard in collision repair training. It provides the insurance industry with proven, recognized solutions for collision repair training.

28.   I-Car has specifically stated that the vehicle maker's procedures should **always** be followed. In fact, the following is a direct quote from I-Car:  "First and foremost, always refer to the body repair manual for the make, model, year, and part in question." Below is from I-Car where this is specifically mentioned:



29.   It was foreseeable to State Farm that accidents involving vehicles it insured or that would later be bought by others would be involved in accidents.

30.   Plaintiff Matthew Seebachan suffered his severe burn and other serious injuries, and Plaintiff Marcia Seebachan suffered her severe injuries, because Defendant had, prior to the accident, forced the body shop repair facility to use deadly, dangerous, unproven, and untested adhesive rather than welds in violation of the OEM requirements.

31.   Defendant's negligent acts and/or omissions include, but are not necessarily limited to, one of more of the following:

   a.   Defendant was negligent for dictating to John Eagle Collision Center that it must use adhesives, rather than Honda's OEM weld specifications when repairing the subject 2010 Honda Fit;
   b.   Defendant was negligent in not being an being an expert in the field of crashworthiness, yet dictating how a repair facility should repair a vehicle;
   c.   Defendant was negligent in not being an expert in structural engineering, material engineering, and/or process engineering; yet dictating how a repair facility should repair a vehicle;
   d.   Defendant was negligent for not conducting any type of engineering analysis or testing on the 2009-2013 Honda Fit platform where the roof was glued and not welded with 104 spot welds;
   e.   Defendant was negligent for not conducting any type of testing to determine the crashworthiness of using glue rather than welds; and/or
   f.   Defendant coerced the repair facility to use glue rather than welds by threatening the repair facility with not getting paid.

32.   John Eagle did not repair the subject 2010 Honda Fit to Honda's body repair specifications due to State Farm's instructions, threats, and/or coercion.

33. John Eagle has admitted that it chose to make money over its safety obligation it owed to customers and other members of the motoring public.

34. Moreover, Defendant State Farm is liable for authorizing, approving, ratifying, and/or dictating the conduct of John Eagle. The acts of State Farm constitute a civil conspiracy for which it is liable for all damages and punitive damages.

35. Additionally, Defendant is liable for negligent undertaking. State Farm undertook to pay for services that it knew or should have known would degrade the crashworthiness of the 2010 Honda Fit. As such, State Farm failed to exercise reasonable care in performing those services, and State Farm's performance increased the risk of harm.

36. State Farm is also responsible for violating the Texas Deceptive Trade Practices Act (DTPA).

37. Lastly, Plaintiffs make a breach of warranty claim against State Farm. State Farm essentially delivered engineering advice and tried to establish its own repair standards, and did so for the benefit of its bottom line. State Farm cared more about cutting costs than it did about ensuring its policy holder's vehicle was crashworthy. Defendant chose its desire to make money over safety of anyone who would ever operate or ride in the 2010 Honda Fit.

38. Plaintiffs did not learn of State Farm's coercion and forcing John Eagle to perform substandard repairs until July 2017 when John Eagle's corporate representative testified under oath that insurance companies trumped the OEM. State

Farm's conduct was inherently undiscoverable. Furthermore, State Farm's conduct was exceptional. Therefore, Plaintiffs affirmatively plead the discovery rule.

39.   The foregoing acts and/or omissions of Defendant were a producing, direct, and/or proximate cause of the crush, burn, and other injuries suffered to Plaintiff Matthew Seebachan and the injuries to Plaintiff Marcia Seebachan, as well as all of Plaintiffs' damages.

## V. Damages to Plaintiffs

40.   Plaintiffs seek recovery for all available damages under any applicable statute and/or common law of the state of Texas.

41.   Indeed, as a producing, direct, and/or proximate result of the acts and/or omissions of Defendant, Plaintiff Matthew Seebachan has suffered damages which include, but are not limited to, the following:

- a.   Physical pain and mental anguish sustained in the past;
- b.   Physical pain and mental anguish that, in reasonable probability, Matthew Seebachan will sustain in the future;
- c.   Loss of earning capacity sustained in the past;
- d.   Loss of earning capacity that, in reasonable probability, Matthew Seebachan will sustain in the future;
- e.   Disfigurement sustained in the past;
- f.   Disfigurement that, in reasonable probability, Matthew Seebachan will sustain in the future;
- g.   Physical impairment sustained in the past;
- h.   Physical impairment that, in reasonable probability, Matthew Seebachan will sustain in the future;
- i.   Medical care expenses in the past;
- j.   Loss of consortium in the past;
- k.   Loss of consortium in the future;
- l.   Medical care expenses that, in reasonable probability, Matthew Seebachan will incur in the future.

42.   Furthermore, as a producing, direct, and/or proximate result of the acts and/or omissions of Defendant, Plaintiff Marcia Seebachan has suffered damages which include, but are not limited to, the following:

   a.   Physical pain and mental anguish sustained in the past;
   b.   Physical pain and mental anguish that, in reasonable probability, Marcia Seebachan will sustain in the future;
   c.   Loss of earning capacity sustained in the past;
   d.   Loss of earning capacity that, in reasonable probability, Marcia Seebachan will sustain in the future;
   e.   Disfigurement sustained in the past;
   f.   Disfigurement that, in reasonable probability, Marcia Seebachan will sustain in the future;
   g.   Physical impairment sustained in the past;
   h.   Physical impairment that, in reasonable probability, Marcia Seebachan will sustain in the future;
   i.   Loss of consortium in the past;
   j.   Loss of consortium in the future;
   k.   Medical care expenses in the past;
   l.   Medical care expenses that, in reasonable probability, Marcia Seebachan will incur in the future.

43.   Additionally, Plaintiffs Matthew and Marcia Seebachan have suffered a loss of household services in the past, a loss of household services that, in reasonable probability, each will sustain in the future, a loss of consortium sustained in the past, and a loss of consortium that each will sustain in the future.

## VI. Exemplary Damages

44.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

45.   State Farm advertises that it is a "good neighbor". On the contrary:  behind the closed doors of auto collision centers, State Farm's "good neighbor" becomes a Dr. Jekyll and Mr. Hyde creature that turns into the "neighbor from hell".

46.   State Farm forced a certified body shop to use glue instead of welds and the shoddy and substandard repair work turned Matthew and Marcia Seebachan's Honda into a bonfire.

47.   State Farm claims that it is a "good neighbor" by being there for its customers. Yet, State Farm's supposed "good neighbor" policy was nowhere to be seen when it paid John Eagle Collision Center for ignoring Honda's body repair specifications.

48.   State Farm controls body shop revenues and profits by forcing body shops to take shortcuts that jeopardize the safety of not only their customers, but also unsuspecting third parties who may later own and/or ride in these vehicles. In effect, State Farm secretly and covertly plays Russian Roulette with its customers and the public by forcing body shops to choose their profits over the safety of the motoring public. Citizens are mandated by law to have insurance, and, consequently, insurance premiums. Insurance companies should be mandated to not interfere with how a vehicle is repaired so shortcuts that endanger people's lives are not taken. These safeguards existed with the 2009-2013 Honda Fit body repair manual but Defendant forced the repair facility to violate the repair manual.

49. Accordingly, Plaintiffs' injuries resulted from Defendant's gross negligence, malice, intentional acts, or actual fraud, which entitles Plaintiffs to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

50. Indeed, the repair work and the dictating of how the repair work was to be performed was done with gross negligence, malice, intent, or actual fraud.

51. John Eagle Collision Center has admitted that it was supposed to follow the 2009-2013 Honda Fit Body Repair Manual and that if the repair specifications were not followed, that serious injury or death could occur. John Eagle ignored the 2009-2013 Honda Fit Body Repair Manual due to the dictates, direction, and/or financial coercion of State Farm. State Farm made a conscious and deliberate decision to place unsuspecting people in a vehicle that it knew or should have known could cause serious injury or harm if involved in an accident such as occurred in this case. Indeed, State Farm knew or should have known that people could be killed or seriously injured, and deliberately chose to place the Seebachans in danger. Such conduct (or lack of conduct) shows a total lack of regard for human life.

52. It also shows a deliberate disregard by Defendant State Farm for the safety of persons who would own or ride in the vehicle at a later date when Defendant knew that it had directed the repair facility to glue rather than weld the safety cage.

## VII. Conclusion and Prayer

53.   For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

a.   actual damages;
b.   exemplary damages;
c.   prejudgment and post-judgment interest at the maximum rate allowed by law;
d.   costs of suit; and
e.   all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas  75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**